UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

| | |
|---|---|
| In re | Chapter 7 |
| John Swift, Jr *aka* John B. Swift | |
| and Linda Swift, | Case No. 94-10285-CEC |
|               Debtors. | |

-------------------------------------------------------------X

Paul I. Krohn, Chapter 7 Trustee,
                Plaintiff,

-against-                                        Adv. Pro. No. 12-1044-CEC

Robert Burton and Jean Bismuth,
                Defendants.

-------------------------------------------------------------X

Robert Burton,
                Third Party Plaintiff,

-against-

Joseph Tedeschi,
                Third Party Defendant.

-------------------------------------------------------------X

Robert Burton,
                Counter-Claimant,

-against-

Joseph Tedeschi,
                Counter-Defendant.

-------------------------------------------------------------X

## <u>DECISION</u>

Appearances:

Adam Michael Levy, Esq.                    Robert Burton
Goldberg Weprin Finkel Goldstein LLP    345 East 93rd Street 18-G
1501 Broadway, 22nd Floor              New York, NY 10129
New York, NY 10036                    Pro Se
Attorneys for Plaintiff

CARLA E. CRAIG
Chief United States Bankruptcy Judge

In this adversary proceeding, the chapter 7 trustee, Paul I. Krohn (the "Trustee") seeks to recover a one-half interest in cooperative apartments 2L, 2U, and 4M located at 44-14 Newtown Road, Astoria, NY (the "Apartments") from Robert Burton. Burton, a real estate investor and former attorney, currently has possession of the Apartments, which are rented to third parties.[1] Although debtor John Swift Jr. ("Swift" or "Debtor") has at all relevant times held record ownership of a one-half interest in the Apartments, Burton claims to have purchased the beneficial interest in Swift's interest in the Apartments from Jean Bismuth, the Debtor's son-in-law, in a transaction that took place in 2004, ten years after this bankruptcy case was commenced. Burton asserts that he is the beneficial owner of the Apartments, and that the Apartments therefore are not property of the estate, and that the Trustee's claims are, in any event, barred by statutes of limitations and equitable defenses. Because there is no proof that Bismuth ever owned any interest in the Apartments, and because the undisputed facts do not support Burton's defenses, the Trustee's motion for summary judgment is granted, and Burton's motion for summary judgment is denied.

The Trustee also sought entry of a default judgment against Jean Bismuth for an accounting and turnover of all proceeds he received in connection with the Apartments. Because the affidavit of service does not reflect that Bismuth was served with the default judgment motion, and it is unclear whether he was served with the summons and complaint at a correct address, the motion for a default judgment against Bismuth is denied.

---

[1] On July 28, 1994, the Appellate Division of Supreme Court of New York, First Department, issued a decision suspending Burton from the practice of law for one year, effective August 28, 1994, and until further order of the court. Matter of Burton, 200 A.D.2d 324 (N.Y. App. Div. 1994). Burton has not been reinstated to the New York Bar.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b), and the

Eastern District of New York standing order of reference dated August 28, 1996, as amended by

order dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A)

and (E).  This decision constitutes the Court's findings of fact and conclusions of law to the

extent required by Bankruptcy Rule 7052.

## BACKGROUND

On January 12, 1994, John Swift, Jr. ("Swift") and Linda Swift (together, the "Debtors")

filed a voluntary joint petition under chapter 7 of the Bankruptcy Code, and the Trustee was

appointed as chapter 7 trustee of the Debtors' estates.  The Debtors did not list any real property

on Schedule A or stock in a cooperative corporation on Schedule B.  Schedule F listed unsecured

claims totaling $14,735,608, including $2,200 owed to "Equity Preservation Co., c/o Robert

Burton, Esq., 2118 Utopia Pkw, Queens, New York 11357."  (Case No. 94-10285-CEC, ECF

No. 1 at 13, Schedule B ¶ 19.)

On April 25, 1994, the Trustee commenced an adversary proceeding to deny the Debtors

a discharge pursuant to § 727[2].  In the complaint (the "Discharge Complaint"), the Trustee

alleged, among other things, that "[u]pon information and belief, Swift has a one-half interest in

three (3) co-op apartments located at 44-14 Newtown Road, Astoria, New York, which

purportedly is owned jointly with Joseph Tedeschi."  (Compl. ¶ 26, Adv. Pro. No. 94-1146-

MAH, ECF No. 1.)  On September 30, 1994, a default judgment was entered against the Debtors

denying them a discharge pursuant to § 727(a)(3) for failing to maintain books and records.

On February 17, 2012, the Trustee commenced this adversary proceeding against Burton

and Bismuth, the Debtors' son in law.  The Trustee alleges that he was informed by a creditor

[2] Unless otherwise specified, all statutory references are to Title 11, U.S.C.

"on the eve of the Final Meeting of Creditors scheduled for March 21, 2011" that Swift was the record holder of shares of stock in 44-14 Newtown Road Apartment Corporation, with an ownership interest in, and proprietary lease to, the Apartments.  (Compl. ¶ 15, Adv. Pro. No. 12-1044-CEC, ECF No. 1.)  Upon investigation, the Trustee confirmed that the stock certificate and the co-op's records reflect that Swift is a 50% owner, and that Joseph Tedeschi owns the remaining 50% interest.  The Trustee points out that the co-op board has never recognized any owners of the stock other than Swift and Tedeschi.  Based upon these facts, the Trustee sought a declaratory judgment that the estate is the 50% owner of the stock and Apartments, and sought turnover of the Apartments, which are managed and controlled by Burton.

In his answer, Burton contends that he purchased the beneficial interest in Swift's interest in the Apartments in April or May 2004 from Bismuth, more than a decade after the Debtors commenced this bankruptcy case, for $30,000.  Burton maintains that the Apartments are not property of the estate because, although Swift holds legal title to a 50% interest in the shares, he never held the beneficial interest; rather, Bismuth, who, Burton asserts, provided the funds to purchase the Apartments, was the beneficial owner.  Burton also asserted various affirmative defenses, including the equitable defenses of waiver, estoppel, time bar, laches, evidence spoliation, unclean hands, unjust enrichment, acquiescence, and equitable subordination.  Burton admits that he knew that Swift was record owner of 50% of the Apartments, and that Swift was in bankruptcy, at the time of his alleged purchase of the beneficial interest in the Apartments from Bismuth.  (Compl. ¶ 22, Adv. Pro. No. 12-1044-CEC, ECF No. 1; Answer ¶ 1, Adv. Pro No. 12-1044-CEC, ECF No. 5.)  Burton asserts that he relied on representations made by Tedeschi and Tedeschi's attorney, Jack D'Emic, that Bismuth was the beneficial 50% owner of the Apartments.  Burton also asserted a counterclaim seeking compensation for time and money

he claims that he spent on supervising renovations to the Apartments, and renting and managing the Apartments.

On August 9, 2012, Burton filed a motion to amend his answer to include a third party claim against Tedeschi, to include a counterclaim against the Trustee for equitable subordination, and seeking to "surcharg[e]" the Trustee "for 100% of any financial harm" incurred by him.

On August 28, 2012, the Trustee filed a motion seeking summary judgment declaring that the estate is the owner of a one-half interest in the Apartments and directing that they be turned over to the Trustee pursuant to § 542, together with an accounting of rents and income. Alternatively, the Trustee seeks summary judgment avoiding the transfer of Swift's interest in the Apartments to Burton pursuant to § 549 and seeking turnover pursuant to § 550.

On January 22, 2013, Burton filed a motion for summary judgment seeking dismissal of this adversary proceeding based upon the defenses of waiver, estoppel, time bar, laches, unclean hands, acquiescence, and equitable subordination.

LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). "More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or

unsubstantiated speculation." <u>Brown v. Eli Lilly & Co.</u>, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotations omitted).

Here, no genuine issue of material fact has been raised as to the estate's ownership of a 50% interest in the Apartments or the Trustee's right to obtain turnover of that interest.

DISCUSSION

The Trustee argues that summary judgment should be granted in his favor declaring that the estate is 50% owner of the Apartments, and that this interest is property of the estate, because it is undisputed that Swift has been the record owner of 50% of the Apartments since prior to the commencement of this case, and Burton has not established that Bismuth was ever the beneficial owner of any interest in the Apartments.  Alternatively, the Trustee seeks summary judgment avoiding any post-petition transfer of any interest in the Apartments to Burton pursuant to § 549, and recovery pursuant to § 550.

Burton argues that summary judgment should be granted in his favor dismissing the complaint because the Trustee had actual knowledge of Swift's interest in the Apartments since 1994, but failed to commence this action until 2012, and therefore, the Trustee has unclean hands.  Burton also argues that the Trustee failed to diligently investigate and recover the Debtors' assets, and should be equitably barred from seeking recovery now.

1.    <u>Section 549 is inapplicable because there was no post-petition transfer of property of the estate.</u>

Under § 541(a), the commencement of a bankruptcy case creates an estate, which includes, subject to certain exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case," regardless of where the property is located or who holds it. 11 U.S.C. § 541(a)(1).  However, "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of

the estate only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). Thus, "the bankruptcy estate does not include property of others in which the debtor has some minor interest such as a lien or bare legal title." Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.), 874 F.2d 88, 93 (2d Cir. 1989) (quotation and citations omitted).

Sometimes, property is removed from the estate pursuant to "unauthorized transfers . . . which are not otherwise prohibited by the Code." Shubert v. Premier Paper Products, LLC (In re Am. Tissue, Inc.), Case No. 01-10370 (KG), Adv. Pro. No. 06-50929 (KG), 2007 WL 4178949, at *7 (Bankr. D. Del. Nov. 20, 2007). These transfers typically involve the debtor as a willing participant. Jubber v. Search Mkt. Direct, Inc. (In re Paige), 413 B.R. 882, 914 (Bankr. D. Utah 2009). Section 549 permits a trustee to avoid those unauthorized transfers. 11 U.S.C. § 549. To utilize § 549, the property in question must have been property of the estate at the time the bankruptcy petition was filed, and then transferred post-petition. 11 U.S.C. § 549. If, at the time of filing, the subject property was not property of the estate, a trustee may not use § 549 to recover it. Musso v. Brooklyn Navy Yard Dev. (In re Westchester Tank Fabricators, Ltd.), 207 B.R. 391, 399 (Bankr. E.D.N.Y. 1997). Pursuant to § 549(d), an action to avoid an unauthorized post-petition transfer must be commenced within two years after the transfer, or before the bankruptcy case is closed, whichever is earlier. 11 U.S.C. § 549(d).

Burton argues that the Trustee's action is untimely pursuant to § 549(d) because it was commenced more than 7 years after he purchased the beneficial interests in the Apartments. The Trustee argues that § 549(d) is inapplicable because Bismuth was not the beneficial owner of the Apartments, and therefore, any purported transfer of the Apartments by him to Burton is a nullity. Alternatively, to the extent § 549 applies, the Trustee argues that the statute of

limitations under § 549(d) should be tolled because the estate's interests in the Apartments were concealed from the Trustee.

Section 549(d) does not bar this action because the record is devoid of any admissible evidence that Bismuth ever owned any interest in the Apartments.  The document upon which Burton relied when "purchasing" the interests, and which Burton proffers to show his ownership of those interests, is insufficient to establish that Bismuth was the beneficial owner of the Apartments.  The document, a letter purportedly from Bismuth to D'Emic (in his capacity as Tedeschi's attorney), "provide[s] assurances to both [D'Emic] and Mr. Tedeschi that, while John B. Swift's name appears on the stock certificates for the shares . . . he is not the owner of these shares."  (Decl. of Def. in Opp'n to Pl.'s Mot. for Summ. J. at Ex. P, Adv. Pro. No. 12-1044-CEC, ECF No. 35-2.)  The letter further states that the Debtor "acquired his 50% interest in these shares with funds belonging entirely to [Bismuth]."  Id.

As evidence of Bismuth's beneficial ownership of an interest in the Apartments at the time of his purported sale to Burton, Burton also provided a copy of Tedeschi's response to an information subpoena served in 2007 during a creditor's state court litigation against Swift.  (Decl. of Def. in Opp'n to Pl.'s Mot. for Summ. J. at Ex. Q, Adv. Pro. No. 12-1044-CEC, ECF No. 35-2.)  In that response, Tedeschi stated that the "shareholder interests in [the Apartments] . . . were sold in April, 2004, by Mr. Swift's son-in-law, Jean Bismuth, M.D., as the owner of such interests, to Mr. Robert Burton."  Id.

As additional evidence that he purchased the beneficial interest in the Apartments, Burton asserts that he was told by the co-op's managing agents that "they knew of no fact inconsistent with Mr. D'Emic's representation about ownership of the Interests."  (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. at 9, Adv. Pro. No. 12-1044-CEC, ECF No. 35-3; Def.'s Local

Rule 7056-1 Stmt. of Undisputed Facts ¶ 41, Adv. Pro. No. 12-1044-CEC, ECF No. 51-2.))

Burton further argues that the directors of the co-op knew of, and consented to, Burton's

purchase, and that the co-op's managing agent and superintendent treated him as the owner of

the Apartments.  (Def.'s Reply Decl. in Supp. of Def.'s Mot. for Summ. J. at ¶¶ 10(D), 11, Adv.

Pro. No. 12-1044-CEC, ECF No. 70.)  As additional support, Burton also points to facsimile

transmissions sent to D'Emic in October 2004, wherein Burton mentions his purchase of the

interests in the Apartments from Bismuth.  (Decl. of Def. in Opp'n to Pl.'s Mot. for Summ. J. at

Ex. V, Adv. Pro. No. 12-1044-CEC, ECF No. 35-2.)

     The statements made in Bismuth's purported letter, and in Tedeschi's information

subpoena response, are inadmissible hearsay, and are wholly unsubstantiated by any other

evidence.  As such, those exhibits are insufficient to raise a genuine issue of material fact with

respect to whether the beneficial interest in Swift's interest in the Apartments ever belonged to

Bismuth.[3]  Similarly, Burton's faxes to D'Emic reflecting Burton's apparent belief that he

purchased Bismuth's beneficial interest in the Apartments do not establish that Bismuth ever

owned the beneficial interest.  Additionally, Burton's argument that the co-op's managing agents

knew of no adverse claim to the interests in the Apartments, or knew of no facts inconsistent

with Bismuth's purported representation, and that the co-op's board, managing agents, and

---

[3] Burton's claims are further undermined by his statement at the hearing held on December 11, 2012, that Bismuth, when contacted about this litigation by a property manager who works for Burton, stated that "he had never heard of me, never met me . . . never owned any property in New York and never sold anything to me."  (Tr. at 5.)  Burton acknowledged that the documents purporting to sell Bismuth's interests in the Apartments to Burton, and the assignments of the proprietary leases, may be forgeries.  (Tr. at 5.)  See Opals on Ice Lingerie v. Bodylines, Inc., 320 F.3d 362 (2d Cir. 2003) (forged contract is void *ab initio*); Cohen v. Treuhold Capital Group, LLC (In re Cohen), 422 B.R. 350, 371-372 (E.D.N.Y. 2010) ("A forged deed is void and conveys no title," and any related assignments of the mortgages are invalid because an assignee acquires "no rights greater than those of the assignor." (quoting Yin Wu v. Wu, 288 A.D.2d 104, 105 (N.Y. App. Div. 2001) and Crispino v. Greenpoint Mortg. Corp., 304 A.D.2d 608, 609 (N.Y. App. Div. 2003))); Gemological Inst. of Am. v. Zarian Co., 349 F. Supp. 2d 692, 696 (S.D.N.Y. 2004) ("Under New York Law, a purchaser of personal property cannot acquire good title from a seller who stole the property.").

superintendent treated him as an owner, are unsubstantiated and, even if true, would not lead to a conclusion that Bismuth or Burton was, in fact, the owner of any interest in the Apartments.

Burton also relies on Swift's financial statement dated September 15, 1990 (the "Financial Statement") to establish that Bismuth owned the beneficial interest in the Apartments, and that the Apartments were not property of the Debtors' bankruptcy estate.[4]  (Def. Ltr. dated July 1, 2013 at Ex. BBBB, Adv. Pro. No. 12-1044-CEC, ECF No. 73.)  In the Financial Statement, Swift lists the Apartments under the heading "cooperative apartments owned," and separately lists a debt to Bismuth for $115,000.  (Id. at Ex. BBBB at 3 and 4.)  Burton argues that the $115,000 debt to Bismuth was not listed in the Debtors' schedules "and thus appears to have been repaid pre-petition [by the Debtor] - possibly or probably by assigning" the beneficial interest in the Apartments to Bismuth."  (Id. at p. 2 ¶ (iii).)

The Financial Statement does not support Burton's position that Bismuth owned the beneficial interest in the Apartments.  Rather, Swift's listing of the Apartments as assets in 1990 contradicts Burton's assertion that the Apartments were purchased with Bismuth's funds, and that Bismuth was always considered the beneficial owner.  Equally unpersuasive is Burton's contention that, based upon the inclusion of Bismuth as a creditor on the Financial Statement, and the exclusion of that debt on the Debtors' bankruptcy schedules, it is "possible" or "probable" that Swift assigned the beneficial interest in the Apartments to Bismuth in satisfaction of the debt owed to Bismuth.  This argument does not raise a genuine issue of material fact sufficient to defeat the Trustee's motion for summary judgment because it is wholly speculative.  See Brown, 654 F.3d at 358 (To defeat a summary judgment motion, a party "may not rely on . . . unsubstantiated speculation.").

---

[4] The Financial Statement was annexed as an exhibit to a complaint filed by George Banat, a creditor of the Debtors, objecting to the Debtors' discharge.  (Compl., Adv. Pro. No. 94-1142-MAH, ECF No. 1.)

It is axiomatic that one can sell only what one owns.  N.Y. U.C.C. § 2-403(1) ("A purchaser of goods acquires all title which his transferor had or had power to transfer . . . ."); Lombard v. Station Square Inn Apartments Corp., 94 A.D.3d 717, 718-719 (N.Y. App. Div. 2012) ("Shares of stock issued in connection with cooperative apartments are personal property, not real property.  Accordingly, a contract for sale of shares referable to a residential cooperative housing apartment . . . is governed by the Uniform Commercial Code . . . ."  (citations omitted)). Because there is no evidence that Bismuth was ever the owner of any beneficial or other interest in the Apartments, Burton has failed to raise a genuine issue of material fact to dispute Swift's ownership of the entire 50% interest in the Apartments, as evidenced by the stock certificate and the co-op's records (Compl. Ex. A, Adv. Pro. No. 12-1044-CEC, ECF No. 1-1).  Accordingly, the Trustee is entitled to summary judgment declaring that Swift's 50% interest in the Apartments is property of the estate, and was in 2004, when Burton contends that Bismuth transferred the interest to him.  Because the interest in the Apartments at all relevant times remained property of the estate, § 549 is inapplicable.[5]  See Paige, 413 B.R. at 915 ("[S]ince the Debtor neither authorized nor willingly transferred the [property] to the [defendant], § 549 does not apply to this proceeding."); Am. Tissue, 2007 WL 4178949, at *6 (section 549 was inapplicable because transfer was void as a violation of § 362).[6]

Given the conclusion that § 549 is inapplicable, the Trustee's remedy lies with § 542.

---

[5] Given this conclusion, Burton's argument that he is entitled to the protections of a good faith purchaser under § 549(c) need not be addressed.

[6] Nothing in this decision should be construed to suggest that evidence that Bismuth supplied the funds for the purchase of the Apartments, or even that Swift recognized Bismuth as the equitable owner of the Apartments, would establish that the equitable interest in the Debtor's interest in the Apartments belonged to Bismuth rather than the Debtor's estate in 2004.  In the absence of evidence that an express trust was created in Bismuth's favor in accordance with New York law, Bismuth would be able to obtain an interest in the Apartments superior to that of the Trustee only through the imposition of a constructive trust.  Constructive trusts are disfavored in bankruptcy, and the remedy of constructive trust is "fraud-rectifying" rather than "intent-enforcing."  Superintendent of Ins. for N.Y. v. Ochs (In re First Cen. Fin. Corp.), 377 F.3d 209, 216 (2d Cir. 2004).  There is no allegation that Bismuth, or Burton, was defrauded by Swift, and there is no allegation that any party was defrauded by the Trustee.  Therefore, even if there were evidence that Swift's interest in the Apartments was purchased with Bismuth's funds, the result would likely be the same.  However, since there is no such evidence, this opinion does not address this issue.

2.    <u>The turnover action is not barred under equitable doctrines.</u>

Section 542 provides that "an entity . . . in possession, custody, or control, during the case of property that the trustee may use, sell, or lease under section 363 of this title  . . . shall  deliver to the trustee, and account for, such property or the value of such property . . . ."  11 U.S.C. § 542(a).  While a turnover action is not subject to a statute of limitations, <u>Pergament v. Yerushalmi (In re Yerushalmi)</u>, 487 B.R. 98, 107 (Bankr. E.D.N.Y. 2012), "[g]ood reason and sound practice dictate that actions under § 542(a) be commenced within a reasonable period of time," <u>Greene v. Schmukler (In re De Berry)</u>, 59 B.R. 891, 898 (Bankr. E.D.N.Y. 1986). Therefore, it subject to equitable defenses, such as laches, equitable estoppel, waiver, and acquiescence.  <u>See</u> <u>Planavsky v. County of Broome (In re Planavsky)</u>, 432 B.R. 481, 494 (Bankr. N.D.N.Y. 2010); <u>Rice v. Johnson (In re Johnson)</u>, 371 B.R. 380, 386-387 (Bankr. E.D. Ark. 2007).

Laches bars the assertion of a claim based upon the plaintiff's unreasonable delay which prejudices the other party.  <u>Ackerman v. Schultz (In re Schultz)</u>, 250 B.R. 22, 37-38 (Bankr. E.D.N.Y. 2000) (<u>citing</u> <u>In re Coffee Cupboard, Inc.</u>, 118 B.R. 197, 200 (Bankr. E.D.N.Y.1990)). Waiver involves "an intentional relinquishment or abandonment of a known right."  <u>Westchester Tank Fabricators</u>, 207 B.R. at 399 (<u>quoting</u> <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938)). "Equitable estoppel applies 'where, because of something which he has done or omitted to do, a party is denied the right to plead or prove an otherwise important fact.'" <u>Weld v. Robert A. Sweeney Agency (In re Patton's Busy Bee Disposal Serv., Inc.)</u>, 182 B.R. 681, 689 (Bankr. W.D.N.Y. 1995) (<u>quoting</u> 28 Am. Jur.2d, Estoppel and Waiver, § 27 (1966)).

Burton argues that the Trustee had actual knowledge of the Debtors' interest in the Apartments since 1994, as evidenced by the allegations in the Discharge Complaint, but failed to

bring this adversary proceeding until 2012.  Based upon this delay, Burton argues that the Trustee is equitably barred from seeking turnover of the Apartments.  Burton further argues that the Trustee should be equitably barred from asserting the turnover claim based upon the Trustee's failure to give Burton prior notice of his intention to assert the claim, and upon the Trustee's failure to pay the costs associated with the Apartments, such as co-op fees, repairs, and operating expenses.

Although the Trustee argues that he did not have actual notice of Swift's interest in the Apartments until the eve of the final meeting of creditors, he acknowledges that he specifically referenced the Apartments in 1994 in the Discharge Complaint.  (Pl.'s Supp. Decl. in Opp'n to Def.'s Mot. for Summ. J. at ¶¶7-9, Adv. Pro. No. 12-1044-CEC, ECF No. 65.)  The Trustee explains that he did not bring this action earlier because he "never received any documentation of the Debtors' interests in the Apartments until 2011 because the interests were concealed from [him] by the Debtors, and thereafter, concealed from [him] by Mr. Burton."  (Id. at ¶4.)  He stated that the allegation in the Discharge Complaint relating to the Apartments was only "upon information and belief," because he was not able to confirm the Debtors' interest, and therefore, he contends that he did not have actual knowledge of the Debtors' interest in the Apartments.  (Id. at ¶ ¶6, 7, 8.)  He further explains that, "the creditors that made the certain allegations concerning the Debtors' potential interests [including the Apartments] did not pursue any claims against the Debtors after the discharge had been denied.  As a result, [his] potential sources for information independent of the Debtors dried up."  (Id. at ¶10.)

The Trustee does not explain why he did not contact the co-op board in 1994 to confirm the Debtors' interests in the Apartments, as he did in 2011.  Nor does he explain why he did not seek to obtain information from the creditors that had alleged that the Debtors held interests in

unscheduled property, pursuant to Bankruptcy Rule 2004 or otherwise. It appears that the Trustee had at least constructive knowledge, if not actual knowledge, of the Swift's interest in the Apartments, at the time he filed the Discharge Complaint. However, notwithstanding the Trustee's knowledge of the Debtors' interest in the Apartments, Burton's equitable defenses to the Trustee's turnover claim must be rejected.

It is well-settled that "he who comes into equity must come with clean hands." Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945). As explained by the Supreme Court:

> This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or *bad faith relative to the matter in which he seeks relief*, however improper may have been the behavior of the [adversary]. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be "the abetter of iniquity." Thus while "equity does not demand that its suitors shall have led blameless lives" as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.
>
> This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." Accordingly one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim . . . .

Precision Instrument Mfg., 324 U.S. at 814-815 (citations omitted and emphasis added).

In other words, equitable defenses are "only available 'to one who possesses a right which is firmly planted in good faith . . . .'" Haggar Int'l Corp. v. United Co. for Food Indus. Corp., 906 F. Supp. 2d 96, 132 (E.D.N.Y. 2012) (quoting Anchor Sav. Bank FSB v. Anchor

Equities, Ltd., No. 86 CV 1623, 1988 WL 70645, at *6 (E.D.N.Y. June 2, 1988), aff'd, 872 F.2d

1021 (2d Cir.1989)).  In determining whether a party may prevail on an equitable defense, a

court may balance the equities, Saratoga Vichy Spring Co., Inc. v. Lehman, 625 F.2d 1037, 1040

(2d Cir. 1980), mindful that "equities of bankruptcy are not the equities of the common law,"

Superintendent of Ins. for N.Y. v. Ochs (In re First Cen. Fin. Corp.), 377 F.3d 209, 218 (2d Cir.

2004) (quoting In re Omegas Grp., Inc., 16 F.3d 1443, 1451, 1452 (6th Cir. 1994).

    In this case, the balance of the equities favors the Trustee.  Burton admits that he knew of

the Debtor's record ownership of a 50% interest in the Apartments, and of the bankruptcy case,

at the time that he purportedly purchased the beneficial interest in the Debtor's interest in the

Apartments, and he failed to contact the Trustee before consummating the sale transaction to

verify his assumption that the estate did not own the equitable interest in the Debtor's share of

the Apartments.  It is unclear why he did not take this obvious measure to ensure that the interest

in the Apartments he was purportedly purchasing would not, at some point in the future, be

recovered by the Trustee for the benefit of Swift's creditors, and Burton was unable, at the

argument on these motions, to explain his conduct.[7]  Whatever the reason, in proceeding in this

fashion, Burton took the risk that the Trustee would later seek turnover of the Apartments.

    Although equitable defenses are "not typically amenable to summary judgment," given

their fact intensive nature, Gucci Am., Inc. v. Guess?, Inc., 843 F. Supp. 2d 412, 420 (S.D.N.Y.

2012), summary judgment is appropriate in this case.  There is no genuine issue of material fact

with respect to the Trustee's good faith.  Even if the Trustee had actual knowledge of the

---

[7] Tr. at 41:24 - 42:3 ("The Court: So, it would have been the easiest thing in the world for you to contact the trustee. And it would have been the right thing to do.  Mr. Burton: . . . For whatever reason it's too many years for me to remember, Your Honor."); 42:24 - 43:16 ("The Court:  But why . . . would you go to such effort to piece together a mosaic that to you represented that the [T]rustee had looked at this . . . [a]nd had determined that it [sic] didn't have an interest in it. . . .  Unless you thought [you] would have to pay more for the interest, if you were going through the [T]rustee.  Mr. Burton: "I no longer recall what Mr. D'Emic said to me, specifically that influenced what I did.").

Debtors' interest in the Apartments, there is no fact in the record which would give rise to an inference that the Trustee delayed the commencement of this adversary proceeding in bad faith, or that the Trustee asserts the turnover claim with unclean hands.

At the same time, there is no genuine issue of material question of fact to be tried with respect to Burton's ability to invoke equitable defenses.  Taking all of Burton's factual assertions at face value, the balance of the equities weighs against him.  It is notable that Burton went through with this transaction despite the absence of any documentary evidence of Bismuth's claimed interest in the Apartments.[8]  In deciding to purchase what he thought was an undocumented beneficial interest in property titled in the Debtor's name, Burton assumed the risk that Bismuth did not have an interest in the Apartments and that the Trustee would seek to recover that property for creditors of the estate.  If Burton had not wanted to take that risk, he could have sought to verify his belief that the beneficial interest in the Apartments was not property of Swift's estate by contacting the Trustee or seeking a ruling from this Court.  Having chosen not to do so, he cannot now in good faith assert equitable defenses when the event, of which he assumed the risk when he entered into this transaction, comes to pass.

This case is readily distinguishable from In re De Berry, upon which Burton relies in support of his laches defense.  In that case, the debtor listed a pre-petition personal injury action on his schedules, for which he hired pre-petition counsel.  De Berry, 59 B.R. at 893.  The chapter 7 trustee in that case did not seek to retain the pre-petition counsel, or any other attorney, as special counsel to pursue the personal injury action because he thought that "the size of the estate did not merit the cost of such as application," and because he thought he was not required to hire counsel if one was already retained by the debtor pre-petition.  Id. at 894.  Three months after the

---

[8] As discussed more fully above, Burton has come forward with no evidence that Bismuth was ever the beneficial owner of an interest in the Apartments.  Nor has he claimed that such evidence existed at the time of the transaction.

first meeting of creditors was held, the pre-petition special counsel settled the personal injury claim for $25,000. Id. The personal injury counsel contacted the trustee to inform him of the settlement, but the trustee did not return the phone call, "leaving a fair inference that he, at least, implicitly approved the settlement." Id. Four months later, after not being contacted by the trustee, the special counsel distributed the settlement amount to the debtor and to himself as payment of his fees, among other parties. Id. More than four years after the distribution, the trustee commenced an action against the special counsel seeking to recover the settlement payment under § 542. Id. at 895. The Bankruptcy Court determined that the trustee's delay in bringing suit was "well beyond any common sense definition of reasonableness," and dismissed the turnover action based upon laches. Id. at 898-899.

Unlike the defendant in De Berry, Burton did not contact the Trustee prior to "purchasing" Bismuth's claimed undocumented equitable interest in the Apartments. Rather, Burton, knowing of the pending bankruptcy case and that title to the property was in Swift's name, decided not to contact the Trustee to obtain any verification that the Apartments were not property of the estate, or seek any relief from the Court in that regard. In so doing, he took the risk that Bismuth was not a beneficial owner and that the Trustee would, at some point in the future, seek turnover of the Apartments. His effort now to invoke equitable defenses to avoid the consequences of his decision to take this risk "transgress[es] equitable standards of conduct," and must therefore fail. Precision Instrument Mfg., 324 U.S. at 997-998.

3.    The Trustee's action is not barred by New York's Civil Practice Law & Rules or the Uniform Commercial Code.

Burton argues that the Trustee's claims are barred by provisions of New York's Civil Practice Law and Rules and New York's Uniform Commercial Code. He relies upon the Supreme Court's decision in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S.

350 (1991), which stated: "It is the usual rule that when Congress has failed to provide a statute of limitations for a federal cause of action, a court 'borrows' or 'absorbs' the local time limitation most analogous to the case at hand." Lampf, 501 U.S. at 355.  He argues that, because § 542 does not contain a statute of limitations, New York's statute of limitations for replevin, detailer and restitution should apply.  Burton contends that failing to apply those statutes of limitations would "result in absurd, harsh, or unjust results, or a result clearly not intended by the legislature, since Congress did not enact section 542(a) with the intent of [suspending] the application of statutes of limitation to turnover proceedings."  (Def.'s Mem. of Law in Supp. of Def.'s Mot. for Summ. J. at 17, Adv. Pro. No. 12-1044-CEC, ECF No. 51-1.)

Burton has not cited a single bankruptcy case that applied state law statute of limitations to a turnover claim under § 542, and this Court has found none.  Nor can it be concluded that failing to apply the state statute of limitations to the turnover claim "results in absurd, harsh, or unjust results, in a result clearly not intended by the legislature."  This argument is rejected.

4.    The Trustee's action is not barred by the "special facts" doctrine.

Burton argues that that the action should be barred under the "special facts" doctrine based upon the Trustee's alleged misstatements in letters to the Clerk of the Court.  The two letters at issue inform the Clerk that the case is "an asset case" (Trustee's Notice of Assets & Request for Notice to Creditors, Case No. 94-10285-CEC, ECF No. 50), and request an adjournment of the final meeting based upon the new information obtained by the Trustee in 2011, that the Debtor owned "a Co-op," (Letter, Case No. 94-10285-CEC, ECF No. 89), which turned out to be the Apartments.

The "special facts" doctrine relates to "the common law claim for a breach of duty to disclose," and arises "where one party's superior knowledge of essential facts renders a

transaction without disclosure inherently unfair." <u>Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.</u>, 601 F. Supp. 770, 773 (S.D.N.Y. 1985).  The assertion that the Trustee failed in these letters to inform the Clerk and the creditors that Swift was the record owner of multiple apartments is irrelevant, and does not bar the Trustee's turnover claim under § 542.

5.    <u>The Trustee did not abandon the interests in the apartment.</u>

Burton argues that the Trustee abandoned any interest in the Apartments, and therefore, he cannot seek turnover.  This argument must be rejected.

Section 554(a) provides that, "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  As the Second Circuit has explained:

> Abandonment is not a process to be taken lightly.  Once an asset is abandoned, it is removed from the bankruptcy estate, and this removal is irrevocable except in very limited circumstances.  <u>See</u> <u>Catalano v. Comm'r</u>, 279 F.3d 682, 686 (9th Cir. 2002).  In light of the impact of abandonment on the rights of creditors, a trustee's intent to abandon an asset must be clear and unequivocal.  <u>See</u> <u>In re Sire Plan, Inc.</u>, 100 B.R. 690, 693 (Bankr. S.D.N.Y.1989).

<u>Chartschlaa v. Nationwide Mut. Ins. Co.</u>, 538 F.3d 116, 123 (2d Cir. 2008).

The Trustee's Notice of Proposed Abandonment or Disposition of Property ("Notice of Abandonment") was filed on August 26, 2010, and stated, in pertinent part:

> Trustee seeks to abandon any claim against the former limited and general partners of 8201 Bay Parkway Associates and in particular John Scoblete as general partner.  It appears that upon investigation by retained special counsel, Michael F. King, that . . . any claim against Mr. Scoblete would be uncollectible.
>
> *In addition, the Trustee seeks to abandon any other interests not listed in the Debtors' petition for other possible interests as a general or limited partner in other ventures, for which the Debtors did not receive a discharge.*

(Notice of Abandonment, Case No. 94-10285-CEC, ECF No. 75 (emphasis added).)

The Trustee asserts that the Notice of Abandonment was intended to relate solely to assets at issue in litigation in state court concerning 8201 Bay Parkway Associates.  The Trustee argues that the Notice of Abandonment "cannot be construed to abandon the Debtors' interests in the Shares of the Apartments that were concealed" from the Trustee.  (Pl.'s Reply Mem. of Law in Further Supp. of Pl.'s Mot. for Summ. J at 7, Adv. Pro. No. 12-1044-CEC, ECF No. 41.)  The Trustee further argues that the abandonment, if any, of the estate's interest in the Apartments is revocable.

The relevant paragraph in the Notice of Abandonment is not only vague and ambiguous, it is incomprehensible.  To the extent any meaning may be gleaned, it appears to relate solely to litigation concerning the Debtor's partnership interests.  It does not constitute a "clear and unequivocal" abandonment of the estate's interests in the Apartments.

6.      The estate's interests in the Apartments were not rejected by § 365.

Burton argues that the proprietary leases with respect to the Apartments were rejected pursuant to § 365(d) because the Trustee failed to assume them within 60 days after the order for relief was entered.  He argues, therefore, that the Apartments and proprietary leases were no longer property of the estate at the time he entered into the contract to purchase them.

This argument lacks merit because a proprietary lease is not subject to the provisions of § 365.  A proprietary lease in a cooperative corporation "is not a 'true' lease under section 365." In re Lefrak, 223 B.R. 431, 438 (Bankr. S.D.N.Y. 1998).  Therefore, the proprietary lease was not rejected and the estate's interest in the proprietary lease remained property of the estate at the time Burton attempted to purchase it.

7.     <u>The Trustee's turnover claim cannot be equitably subordinated.</u>

Burton also argues that the Trustee's claim should be equitably subordinated to his counterclaims against the Trustee. This argument fails because the doctrine of equitable subordination cannot apply to the Trustee's cause of action because the Trustee is not a creditor of this estate. Section § 510(c) provides that "after notice and a hearing, the court may - (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest." 11 U.S.C. § 510. "The purpose of equitable subordination is to undo wrongdoing by an individual creditor in the interests of the other creditors." <u>Official Comm. of Unsecured Creditors of AppliedTheory Corp. v. Halifax Fund, L.P. (In re AppliedTheory Corp.)</u>, 345 B.R. 56, 59 (S.D.N.Y. 2006). As such, § 510 is inapplicable to the Trustee's turnover claim against Burton. There is also no basis to subordinate the estate's interest in the Apartments under New York law. <u>See</u> <u>Shultis v. Woodstock Land Dev. Assocs.</u>, 599 N.Y.S.2d 890, 892 (N.Y. App. Div. 1993) (A senior mortgagee's priority may be subordinated to a junior mortgagee's interest if the senior mortgagee modified the terms of the note or mortgage without the consent of the junior mortgagee and substantially impaired the junior mortgagee's security interest.); <u>State Factors Corp. v. Sales Factors Corp.</u>, 12 N.Y.S.2d 12 (N.Y. App. Div. 1939) (a plaintiff's interest in property was superior to a defendant's equitable interest when the plaintiff purchased the property for value and without notice of the defendant's equitable interest).

8.     <u>The Trustee's claims are not barred based upon evidence spoliation.</u>

Burton argues that the Trustee's claims should be barred because the recordings of the Debtors' testimony given in the meeting of creditors pursuant to § 341 were destroyed in

accordance with the United States Trustee's records retention policy.  Burton contends that,

without those recordings, it is "impossible for the Trustee to prove the factual claims asserted in

the Complaint."  (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. at 16, Adv. Pro. No.

12-1044-CEC, ECF No. 35-3.)

This argument must be rejected.  The loss of evidence does not bar an action.  Rather,

"[i]f a party loses or destroys evidence relevant to a case, an adverse inference is warranted

because the loss effectively denies the opposing party an opportunity to dispute the allegations."

Shugrue v. Chem. Bank (In re Ionosphere Clubs, Inc.), 177 B.R. 198, 207 (Bankr. S.D.N.Y.

1995).  In this case, the Trustee did not lose or destroy evidence; the evidence was destroyed by

the United States Trustee in accordance with that agency's policies.  "[W]hen the missing or

destroyed information is not in the exclusive control of one party, an adverse inference is not

warranted because no one has been harmed."  Id.  Moreover, recordings of the § 341 meetings

are not necessary for the Trustee to prove that he is entitled to turnover of the Apartments.  It is

undisputed that Swift is the owner of a 50% interest in the Apartments.

Burton's reliance on Hero Boy, Inc. v. Dell'Orto, 306 A.D.2d 226 (N.Y. App. Div.

2003), is misplaced.  In that case, the court did not bar an action; rather, it found that the plaintiff

failed to timely seek damages, and therefore, the court calculated the plaintiff's damages based

upon available records.  Id. at 228.

9.    Rules 12(b)(6) and 9(b) are not defenses to the Trustee's motion for summary judgment.

Burton argues that the Trustee's complaint fails to state a claim upon which relief may be

granted, and that the complaint fails to satisfy the heightened standard of pleading under Rule

9(b) of the Federal Rules of Civil Procedure.

It has already been concluded that the Trustee is entitled to summary judgment, and therefore, any argument under Rule 12(b)(6) must be rejected. Additionally, Rule 9(b) is inapplicable because the complaint did not allege any claims against Burton sounding in fraud.

10.    <u>The Trustee's motion for default judgment against Bismuth is denied.</u>

The Trustee served the summons and complaint on Bismuth at an address in Brooklyn, which was the address listed for Bismuth on his contract with Burton. (Tr. at 8.) It cannot be concluded that proper service was effectuated on Bismuth in light of the questions raised by Burton at the hearing whether the contract was signed by Bismuth, or someone pretending to be Bismuth. Based upon Burton's statement to the Court at the hearing on this motion, it appears that Bismuth may reside in Texas and may have had no knowledge of this action until the day before the hearing on this motion. (Tr. at 4, 8.) Additionally, the Trustee's affidavit of service indicates that the motion was only served on Burton, and not on Bismuth. (Aff. of Service, Adv. Pro. No. 12-1044-CEC, ECF No. 21.) Under these circumstances, the Trustee's motion for a default judgment against Bismuth must be denied.

<u>CONCLUSION</u>

Burton has not raised a material question of fact to defeat the Trustee's motion for summary judgment, and has not established that he is entitled to summary judgment dismissing this action. Swift holds record title to 50% of the stock and the Apartments, and there is no evidence that Bismuth was ever the beneficial owner of that interest. Therefore, the Trustee is entitled to judgment declaring that the estate holds a 50% ownership interest in the stock and the Apartments, and directing Burton to turn over the Apartments to the Trustee pursuant to § 542. Burton must also provide an accounting of all the rents and proceeds he received on account of the Apartments. The Trustee's motion for a default judgment against Bismuth is denied without prejudice. A separate order will issue.



**Dated: Brooklyn, New York**
**August 5, 2013**

**Carla E. Craig**
**United States Bankruptcy Judge**