UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re                                                                    Chapter 7
John Swift, Jr. *aka* John B. Swift
and Linda Swift *aka* Linda S. Swift,                      Case No. 94-10285-CEC
                                  Debtors.
------------------------------------------------------------X
Paul I. Krohn, Chapter 7 Trustee,
                                  Plaintiff,

-against-                                                              Adv. Pro. No. 12-1044-CEC

Robert Burton and Jean Bismuth,
                                  Defendants.
------------------------------------------------------------X


DECISION


Appearances:

J. Ted Donovan, Esq.                                    Robert Burton
Goldberg Weprin Finkel Goldstein LLP       345 East 93rd Street 18-G
1501 Broadway, 22nd Floor                          New York, NY 10129
New York, NY 10036                                   *Pro Se*
*Attorneys for Plaintiff*

                                                                Justin Sher, Esq.
                                                                Sher Tremonte LLP
                                                                41 Madison Avenue, 41st floor
                                                                New York, NY 10011
                                                                *Attorneys for Joseph Tedeschi*


CARLA E. CRAIG
Chief United States Bankruptcy Judge

This adversary proceeding was commenced by the chapter 7 trustee, Paul I. Krohn (the

"Trustee"), to recover a one-half interest in cooperative apartments 2L, 2U, and 4M located at

44-14 Newtown Road, Astoria, NY (the "Apartments") from Robert Burton.  The Court

previously granted the Trustee's motion for summary judgment in this proceeding, declaring that

the estate holds a 50% ownership interest in the Apartments, directing Burton to turn over the

Apartments to the Trustee pursuant to 11 U.S.C. § 542,[1] and directing Burton to provide an

accounting of all the rents and proceeds he received on account of the Apartments (the

"Summary Judgment Decision").  In re Swift, 496 B.R. 89 (Bankr. E.D.N.Y. 2013).  Burton, a

real estate investor and former attorney, now seeks to amend his answer to include third-party

claims against Joseph Tedeschi, who holds the remaining 50% ownership interest in the

Apartments.  However, the Court lacks subject matter jurisdiction over the proposed third-party

claims because they have no conceivable effect on the bankruptcy estate.  For this reason, the

proposed amendment would be futile, and Burton's motion to amend is therefore denied.

## JURISDICTION

This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334(b),

and the Eastern District of New York standing order of reference dated August 28, 1996, as

amended by order dated December 5, 2012.  This adversary proceeding is a core proceeding

under 28 U.S.C. § 157(b)(2)(A) and (E).  This decision constitutes the Court's findings of fact

and conclusions of law to the extent required by Bankruptcy Rule 7052.

## BACKGROUND

On January 12, 1994, John Swift, Jr. ("Swift") and Linda Swift (together, the "Debtors")

filed a voluntary joint petition under chapter 7 of the Bankruptcy Code, and the Trustee was

---

[1] Unless otherwise indicated, "Section" or "§" refers to a section under title 11 of the United States Code (the "Bankruptcy Code"), and "Rule" refers to the Federal Rules of Bankruptcy Procedure.

appointed as chapter 7 trustee of the Debtors' estates.  The Debtors did not list any real property

on Schedule A or stock in any cooperative corporation on Schedule B.  They listed unsecured

claims totaling $14,735,608, including $2,200 owed to "Equity Preservation Co., c/o Robert

Burton, Esq., 2118 Utopia Pkw, Queens, New York 11357," on Schedule F.  (Case No. 94-

10285-CEC, ECF No. 1 p. 13, Schedule F ¶ 19.)

On April 25, 1994, the Trustee commenced an adversary proceeding to deny the Debtors

a discharge pursuant to § 727, alleging, among other things, that "[u]pon information and belief,

Swift has a one-half interest in three (3) co-op apartments located at 44-14 Newtown Road,

Astoria, New York, which purportedly is owned jointly with Joseph Tedeschi . . . ."  (Adv. Pro.

No. 94-1146-MAH, ECF No. 1 ¶ 26; ECF No. 65, Ex. B ¶ 26.)[2]  On September 30, 1994, a

default judgment was entered against the Debtors denying them a discharge pursuant to

§ 727(a)(3) for failing to maintain books and records.

On February 17, 2012, the Trustee commenced this adversary proceeding against Burton

and Jean Bismuth, the Debtors' son-in-law, seeking a declaratory judgment that the estate is the

50% owner of the stock and Apartments, and seeking turnover of the Apartments, which were

managed and controlled by Burton.

On April 2, 2012, Burton filed an answer (the "Original Answer"), in which he contended

that he purchased Swift's interest in the Apartments in April or May 2004 from Bismuth, more

than a decade after the Debtors commenced this bankruptcy case, for $30,000.  The Original

Answer contains two affirmative defenses and one counterclaim (the "First Affirmative

Defense," the "Second Affirmative Defense," and the "Counterclaim," respectively).  The First

Affirmative Defense is actually a series of affirmative defenses, including the equitable defenses

---

[2] Unless otherwise indicated, "ECF No." refers to the docket number of a document filed in Adversary Proceeding
Number 12-1044-CEC

of waiver, estoppel, time bar, laches, evidence spoliation, unclean hands, unjust enrichment, acquiescence, and equitable subordination. The Second Affirmative Defense is equitable estoppel. The Counterclaim asserts that Burton relied on representations made by Tedeschi and Tedeschi's attorney, Jack D'Emic, that Bismuth was the beneficial owner of Swift's 50% share of the Apartments, and seeks compensation for time and money that Burton claims he spent on renovating, renting and managing the Apartments. Although designated as a counterclaim against the Trustee, the Counterclaim, in substance, seeks to recover from Tedeschi for any liability that Burton may have to the Trustee. Burton also listed Tedeschi as a third-party defendant in the caption of the Original Answer. On April 12, 2012, the clerk of the court issued a third-party summons against Tedeschi and served it on Burton. Burton, however, never served the third-party summons on Tedeschi. (ECF Nos. 6 and 7.)

On August 9, 2012, Burton filed a motion to amend his answer (the "Motion to Amend") to include another affirmative defense (the "Third Affirmative Defense") and third-party claims against Tedeschi (the "Third-Party Claims"). The Third Affirmative Defense asserts a claim against the Trustee for breach of fiduciary duty, seeks equitable subordination of the Trustee's claim, a surcharge against the Trustee, and dismissal of this adversary proceeding based on detrimental reliance and estoppel. The Third-Party Claims are exactly the same as the Counterclaim in the Original Answer, except that they are designated as the "Fourth Affirmative Defense and First Third Party Cause Pf [sic] Action Against Third Party Defendant Joseph Tedeschi."

On August 28, 2012, the Trustee filed opposition to the Motion to Amend and filed a cross-motion for summary judgment (the "Plaintiff Summary Judgment Motion"), seeking declaratory judgment that the estate is the owner of a one-half interest in the Apartments and an

order directing that the Apartments be turned over to the Trustee pursuant to § 542, together with an accounting of rents and income.

On October 3, 2012, Tedeschi filed an answer to the Counterclaim in the Original Answer, in which he asserts that the Counterclaim is not actually a third-party claim and argues that the allegations against Tedeschi are irrelevant and have no bearing on the adversary proceeding.

January 22, 2013, Mr. Burton filed a motion for summary judgment seeking dismissal of this adversary proceeding based upon the defenses of waiver, estoppel, time bar, laches, unclean hands, acquiescence, and equitable subordination (the "Burton Summary Judgment Motion"). On July 12, 2013, the Court closed the record on the Burton Summary Judgment Motion and the Plaintiff Summary Judgment Motion, and on July 16, 2013, the Court took the Motion to Amend under advisement.

On August 5, 2013, the Court granted the Plaintiff Summary Judgment Motion and denied the Burton Summary Judgment Motion, declared that the estate holds a 50% ownership interest in the stock and the Apartments, directed Burton to turn over the Apartments to the Trustee pursuant to § 542, and directed Burton to provide an accounting of all the rents and proceeds he received on account of the Apartments. Swift, 496 B.R. 89. On August 19, 2013, Burton filed a motion to reconsider the Summary Judgment Decision, and on January 9, 2014, the Court denied his motion to reconsider. Burton appealed to the district court, and his appeal was dismissed on May 14, 2014. (ECF No. 103.)

At a hearing on May 20, 2014, Burton renewed his request to amend his answer in order to assert his claims against Mr. Tedeschi. On May 30, 2014, the Court restored the Motion to

4

Amend to the court's calendar to address the Third-Party Claims.  (ECF No. 100.)  On July 17,

2014, Burton filed a declaration in further support of the Motion to Amend.  (ECF No. 111.)

## LEGAL STANDARD

I.    **Leave to Amend**

Fed. R. Civ. P. 15(a), made applicable by Fed. R. Bankr. P. 7015, governs motions to

amend pleadings, and provides that leave to amend "shall be freely given when justice so

requires."  Foman v. Davis, 371 U.S. 178, 182 (1962).  "[T]he decision to grant or deny a motion

to amend rests within the sound discretion of the district court."  Henriquez v. Kelco

Landscaping Inc., 299 F.R.D. 376, 378 (E.D.N.Y. 2014).

"To determine whether leave to amend should be granted, it is appropriate to take into

account the nature of the amendment requested."  Freidus v. Barclays Bank PLC, 734 F.3d 132,

140 (2d Cir. 2013).  For example, "[l]eave to amend may properly be denied if the amendment

would be 'futile.'"  Grullon v. City of New Haven, 720 F.3d 133, 140 (2d Cir. 2013) (quoting

Foman, 371 U.S. at 182) (alteration omitted).  The issue of futility of a proposed amendment

may arise in a number of contexts, including, as pertinent here, when the court lacks subject

matter jurisdiction over the proposed amended claim.  See U.S. Underwriters Ins. Co. v. Ziering,

No. 06-CV-1130, 2010 WL 3419666, at *2 (E.D.N.Y. Aug. 27, 2010) ("An amendment is

considered futile if, for example, it could not defeat a motion to dismiss . . . for lack of subject

matter jurisdiction."); Ricciardi v. Kone, Inc., 215 F.R.D. 455, 456 (E.D.N.Y. 2003) ("If a

proposed amendment adds a claim and party over which the Court lacks subject matter

jurisdiction, the amendment would be futile.").

II.    **The Bankruptcy Court's Subject Matter Jurisdiction**

The district courts have original and exclusive jurisdiction over all cases under the

Bankruptcy Code, and original, but not exclusive, jurisdiction of civil proceedings "arising

under" the Bankruptcy Code or "arising in or related to" cases under the Bankruptcy Code. 28

U.S.C. § 1334(a), (b).  Each district court may refer such cases and proceedings to the

bankruptcy judges of the district, and the United States District Court for the Eastern District of

New York has done so.  28 U.S.C. § 157(a); Eastern District of New York Standing Order of

Reference dated August 28, 1996, as amended by Order dated December 5, 2012.  A proceeding

"arises under" the Bankruptcy Code "if it 'invokes substantive rights created by bankruptcy

law.'"  U.S. Dep't of Labor v. Kirschenbaum, 508 B.R. 257, 264 (E.D.N.Y. 2014) (quoting In re

Housecraft Indus. USA, Inc., 310 F.3d 64, 70 (2d Cir.2002)) (alteration omitted).  A proceeding

"arises in" a case under the Bankruptcy Code if it "covers claims that 'are not based on any right

expressly created by Title 11, but nevertheless, would have no existence outside of the

bankruptcy.'"  Baker v. Simpson, 613 F.3d 346, 351 (2d Cir. 2010) (quoting In re Wood, 825

F.2d 90, 97 (5th Cir.1987)) (alteration omitted).  "[A] proceeding is related to a case under the

Bankruptcy Code 'if the outcome of the litigation might have any conceivable effect on the

bankruptcy estate, or has any significant connection with the bankrupt estate.'"  In re Allou

Distributors Inc., 2012 WL 6012149, at *6 (Bankr. E.D.N.Y. Dec. 3, 2012) (quoting Lead I JV,

LP v. North Fork Bank, 401 B.R. 571, 581 (E.D.N.Y.2009)).

In other words, bankruptcy courts have jurisdiction over non-debtor third-party claims

not arising under the Bankruptcy Code or arising in a bankruptcy case, such as the claims at issue

here, to the extent that they are "related to" a case under the Bankruptcy Code.  Such jurisdiction

would exist if, for example, the "'third-party non-debtor claims . . . directly affect the res of the

bankruptcy estate,'" In re Quigley Co., Inc., 676 F.3d 45, 53 (2d Cir. 2012) (quoting In re Johns-

Manville Corp., 517 F.3d 52, 66 (2d Cir. 2008)), or if the outcome "in any way impacts upon the

handling and administration of the bankrupt estate."  Pacor, Inc. v. Higgins, 743 F.2d 984, 994

(3d Cir. Pa. 1984).  Stated another way, "[i]n order for a proceeding to relate to a bankruptcy case, it must have a significant connection with the case and have a potential effect on the bankruptcy estate."  In re Tarone, 434 B.R. 41, 49 (Bankr. E.D.N.Y. 2010).

## DISCUSSION

### I.    The Third-Party Claims

Burton seeks various forms of relief against Tedeschi.  Specifically, Burton requests that "any Claim [the Trustee] might be allowed to enforce concerning the [Apartments] should be . . . satisfied solely from [Tedeschi's] 50% share of the apartments [and] determined in a direct suit between plaintiff amd [sic] [Tedeschi] which [Burton] is not a party to."  (Proposed Amended Answer, ECF No. 13, Ex. A ¶ 37.)  Burton seeks, in substance, to hold Tedeschi liable for the full extent of his liability is to the Trustee.  For the reasons stated below, the Court does not have subject matter jurisdiction over these claims, so amendment would be futile, and should not be permitted.

Burton argues that were he to succeed on his claims against Tedeschi, "such judgment would extinguish one claim of the Debtors' estate and create another one."  (ECF No. 111 ¶ 18.)  For this reason, Burton asserts, his claims against Tedeschi are "related to" the Debtors' bankruptcy case.  Burton also argues that under the "two innocents rule" set forth in Griswold v. Haven, 25 N.Y. 595 (1862), the Trustee's claims against Burton should properly be brought against Tedeschi, and therefore Burton's claims against Tedeschi "[raise] a question about the proper administration of the Debtors' estate."  (ECF No. 118.)  Finally, Burton argues that he should be allowed to amend his answer to assert the Third-Party Claim because his proposed amended answer merely corrects a procedural defect in the Original Answer, designating the claims against Tedeschi as third-party claims instead of counterclaims.  (Motion to Amend, ECF No. 13 ¶¶ 4-7.)

The Trustee responds, in substance, that whether Burton may have a claim against Tedeschi is irrelevant to determining the parties' rights in the Debtors' 50% interests in the Apartments.  (ECF No. 16 ¶ 10.)  Similarly, Tedeschi argues that any third-party claim against him would have no conceivable effect on the bankruptcy estate, and that even if Burton prevailed on the Third-Party Claims, the estate would remain the 50% owner of the Apartments.  (ECF No. 105.)

As discussed above, courts should freely grant leave to amend a pleading when justice requires, but may properly deny leave to amend if the proposed amendment would be futile. Granting Burton leave to amend his answer to assert the Third-Party Claims would be futile if the Court lacks subject matter jurisdiction over the Third-Party Claims.  The Court does not have subject matter jurisdiction over the Third-Party Claims because they do not directly affect the <u>res</u> of the bankruptcy estate, nor does their outcome impact the administration of the bankrupt estate.

The Debtors' bankruptcy case has a long history in this Court.  At this point in the administration of the case, the Debtors have been denied a discharge and an order has been entered declaring that the Debtors' 50% share of the Apartments is property of the bankruptcy estate and directing that it be turned over to the Trustee.  The Trustee is seeking to administer this property, the estate's last remaining asset.[3]  The Third-Party Claims would not affect the validity of that order, or the estate's ownership of the Debtors' 50% share of the Apartments, which has already been determined by a final order.  Mr. Burton's assertion that if he prevails on his claims against Mr. Tedeschi, "such judgment would extinguish one claim of the Debtors' estate and create another one" is incorrect.  (ECF No. 111 ¶ 18.)  If Burton succeeds on his

---

[3] The Trustee's Final Report, filed in February 2011, one year prior to this adversary proceeding (Case No. 94-10285-CEC, ECF No. 84), shows gross receipts of $23,991.85, mostly composed of a $20,000 settlement that the Debtors paid to the Trustee on account of their interest in unrelated co-op apartments, and which has been fully distributed, either on account of administrative fees or to creditors.

claims against Tedeschi, he may be able to recover damages from Tedeschi, but the composition

of the bankruptcy estate will remain exactly the same.  The estate's rights in the Apartments, and

claim against Mr. Burton, have been determined by final order.  The resolution of the Third-

Party Claims would not affect the <u>res</u> of the bankruptcy estate.

In order to administer the 50% share in the Apartments that is property of the estate, the

Trustee, presumably, will seek to sell either the estate's interest in the Apartments, or the estate's

and Tedeschi's interest in the Apartments pursuant to § 363(h).  The proceeds received by the

Trustee will ultimately be distributed.  This process will not be affected in any way if Burton

succeeds on his Third-Party Claims against Tedeschi.  Therefore, the outcome of the Third-Party

Claims would not impact the handling and administration of the estate.

Burton's reliance <u>Griswold</u> is misplaced.  In <u>Griswold</u>, the court held that where one

partner makes a fraudulent representation to a third party, his innocent partners are bound by the

representation and responsible for damages to the third party on account of the fraudulent

representation.  <u>Griswold</u>, 25 N.Y. at 606.  Burton's argument appears to be that he is the

innocent party in this scenario and should therefore be shielded from any liability.  However, the

<u>Griswold</u> court did not limit the liability of innocent parties for the fraudulent misrepresentations

of others; in fact, it did the opposite.  Nothing in <u>Griswold</u> requires the Trustee to seek to recover

damages from Tedeschi.

To the extent that Burton relies on the "role of two innocents doctrine," he is similarly

misguided.  This doctrine is also called equitable estoppel, and states "'that where one of two

innocent persons must suffer by the acts of a third, he who has enabled such third person to

occasion the loss must sustain it.'"  <u>Bunge Corp. v. Mfrs. Hanover Trust Co.</u>, 286 N.E.2d 903,

905 (N.Y. 1972) (quoting <u>Nat'l Safe Deposit Sav. & Trust Co. v. Hibbs</u>, 229 U.S. 391, 394,

(1913)); see also 57 N.Y. Jur. 2d Estoppel, Etc. § 31.  This doctrine is not applicable to the facts

of this case, because this is an action brought by the Trustee to recover property of the estate, not

an action brought by an injured plaintiff for damages or fraud.  In any event, an order

determining that the Debtors' 50% interest in the Apartments is property of the estate, and

requiring Burton to turn over the Apartments and file an accounting of all rent and income

received, was entered on August 5, 2013, which is final and non-appealable and which cannot be

collaterally attacked.

Finally, the Court is not persuaded by Burton's argument that his proposed amended

answer merely corrects a procedural defect in the Original Answer and should therefore be

allowed.  Leave to amend a pleading may properly be denied if the amendment would be futile,

regardless of the reason why the amendment is sought.  See Ganthier v. N. Shore-Long Island

Jewish Health Sys., 298 F. Supp. 2d 342, 349 (E.D.N.Y. 2004) ("A determination that a

proposed claim is futile is made under the same standards that govern a motion to dismiss under

Rule 12(b)(6).").  The fact that Burton's proposed amendment simply re-labels his counterclaim

as a third-party claim against Tedeschi does not affect the conclusion that the Court is

constrained to reach: the amendment would be futile because this Court lacks subject matter

jurisdiction over the Third-Party Claims.

Accordingly, for all of these reasons, the Motion to Amend is denied.

## II.        The Third Affirmative Defense

The Third Affirmative Defense asserts a claim against the Trustee for breach of fiduciary

duty, seeks equitable subordination of the Trustee's claim, a surcharge against the Trustee, and

dismissal of this adversary proceeding based on detrimental reliance and estoppel.  The

arguments and defenses raised by the Third Affirmative Defense were also raised by the Burton

Summary Judgment Motion, which was denied by the Court in the Summary Judgment Decision.

To the extent that the Third Affirmative Defense asserts an equitable subordination

counterclaim against the Trustee, the Court already determined that equitable subordination is

inapplicable in the Summary Judgment Decision:

> [T]he doctrine of equitable subordination cannot apply to the Trustee's cause of
> action because the Trustee is not a creditor of this estate.    Section § 510(c)
> provides that "after notice and a hearing, the court may - (1) under principles of
> equitable subordination, subordinate for purposes of distribution all or part of an
> allowed claim to all or part of another allowed claim or all or part of an allowed
> interest to all or part of another allowed interest."   11 U.S.C. § 510.   "The purpose
> of equitable subordination is to undo wrongdoing by an individual creditor in the
> interests of the other creditors."    Official Comm. of Unsecured Creditors of
> Applied Theory Corp. v. Halifax Fund, L.P. (In re AppliedTheory Corp.), 345
> B.R. 56, 59 (S.D.N.Y. 2006).   As such, § 510 is inapplicable to the Trustee's
> turnover claim against Burton.   There is also no basis to subordinate the estate's
> interest in the Apartments under New York law.   See Shultis v. Woodstock Land
> Dev. Assocs., 599 N.Y.S.2d 890, 892 (N.Y. App. Div. 1993) (A senior
> mortgagee's priority may be subordinated to a junior mortgagee's interest if the
> senior mortgagee modified the terms of the note or mortgage without the consent
> of the junior mortgagee and substantially impaired the junior mortgagee's security
> interest.); State Factors Corp. v. Sales Factors Corp., 12 N.Y.S.2d 12 (N.Y. App.
> Div. 1939) (a plaintiff's interest in property was superior to a defendant's
> equitable interest when the plaintiff purchased the property for value and without
> notice of the defendant's equitable interest).

In re Swift, 496 B.R. at 104-05.

In any event, the Motion to Amend to add the Third Affirmative Defense must be denied,

because the motion seeks to add an affirmative defense to a pleading after judgment has been

entered.   See Rosendale v. Iuliano, 67 F. App'x 10, 14 (2d Cir. 2003) ("'Once judgment is

entered, the filing of an amended complaint is not permissible until judgment is set aside or

vacated pursuant to Fed.R.Civ.P. 59(e) or 60(b).'") (quoting National Petrochemical Co. of Iran

v. M/T Stolt Sheaf, 930 F.2d 240, 244 (2d Cir.1991)) (alterations omitted).

## CONCLUSION

For the reasons above, the Burton's Motion to Amend is denied.  A separate order shall issue herewith.



**Dated: Brooklyn, New York**
**November 3, 2014**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**

12